STATE EX REL. BARNHART, APPELLANT, *v.* CRANSTON ET AL., RESPONDENTS.

(No. 8,222.)

(Submitted December 1, 1941. Decided January 10, 1942.)

[120 Pac. (2d) 828.]

*Mr. Merle C. Groene,* for Appellant, submitted an original and supplemental brief, and argued the cause orally.

*Mr. John W. Bonner,* Attorney General, *Mr. Howard M. Gullickson,* First Assistant Attorney General, and *Mr. J. E. McKenna,* County Attorney of Fergus County, for Respondents, submitted a brief; *Mr. Bonner* and *Mr. McKenna* argued the cause orally.

MR. JUSTICE ANGSTMAN, delivered the opinion of the Court.

This is a proceeding in mandamus. The court sustained defendants' demurrer and motion to quash. Relator declined to amend the petition, and judgment in favor of the defendants was entered dismissing the proceedings. Relator has appealed from the judgment. The only legal question involved is whether the petition states facts sufficient to constitute a cause of action in mandamus.

Briefly summarized, the petition alleges: That the first three named defendants constitute the members of the board of county commissioners of Fergus county; that some time prior to the 23rd day of June, 1936, Fergus county became the owner, through tax deed, of certain described real estate; that thereafter the board of county commissioners advertised the property for sale as required by law; that prior to the sale Isabella Scally, who was the original owner of the land at the time the tax deed was taken, exercised her right under the provisions of section 2235, Revised Codes, as amended, to repurchase the land, and on the 23rd day of June, 1936, a contract was entered into between the board and Isabella Scally, whereby she was given the right to pay for the land in installments.

The contract provided that time was of the essence thereof, and that, in the event any installment was not paid when due, the contract was automatically cancelled without notice.

On December 29, 1939, the board adopted a resolution reciting, in substance, the making of the contract with Isabella Scally, and that she had wholly failed to carry out its provisions and was then in default in that she had failed to pay the accumulated taxes amounting to $123.42, as provided in the contract, and that she had failed to pay installments due under the contract in the sum of $173.38, and had failed to pay interest amounting to $58.48. The resolution recited that the board then and there ordered that the contract should be cancelled and held for naught, and recited that notice of such cancellation should be given immediately by registered mail to the purchaser. It is alleged that all the rights of Isabella Scally were thereby cancelled, forfeited and terminated, and that she was thereafter without any rights in the land; that on the first of February, 1940, relator, who desired to purchase the property, appeared before the board and offered to buy it, but was informed that the land would have to be reappraised and re-offered for sale; that the board thereupon did re-advertise the property for sale after it had been reappraised at $550, and that the sale was noticed for February 24, 1940. Relator was present for the purpose of bidding, but on that day the board attempted to rescind its action of December 29, 1939, and undertook to reinstate the contract with Isabella Scally, and attempted to re-invest her with all of the rights she had theretofore in the contract. Thereafter, and on the 12th day of March, 1940, Isabella Scally assigned her interest to defendant Paul Fishburn. Relator on the 24th day of February, 1940, at the time the sale was noticed, bid the sum of $550 for the property and made a legal tender of $110 as the down payment, and offered to enter into a contract for the purchase of the land at the price bid therefor, which offer and tender were refused upon the ground that the land

had been withdrawn from sale due to the reinstatement of the contract with Isabella Scally.

It is alleged that on February 24th, 1940, Isabella Scally was without any right, under section 2235, Revised Codes, as amended, to exercise the right of repurchase, and that the board was without right to withdraw the land from sale, and that it was the clear legal duty of the board to sell it and to accept and receive the tender made by relator and to enter into a contract with him. Relator asks for a writ of mandate requiring the defendants to revoke their action of February 24, 1940, in reinstating the contract with Isabella Scally, and to compel the board to conduct a sale or to accept relator's tender and offer to purchase the land and to make a contract with him for the sale of the property.

The laws pertaining to the sale of lands acquired by the county for delinquent taxes are contained in section 2208.1, as amended by Chapter 193 of the Laws of 1939, and section 2235, Revised Codes, as amended by Chapter 181 of the Laws of 1939, and section 4465.9, Revised Codes. In general, these laws provide that it is the duty of the board to offer the property for sale at public auction. The sale may be made for cash or on such terms as the board may approve, provided that when the sale is made on terms, at least 20% shall be paid in cash and the remainder may be made in installments extending over a period not to exceed five years. Deferred payments bear interest at the rate of four per cent. per annum. When such lands are sold to some one other than the original taxpayer, whose property was deeded to the county, the contract shall contain "such terms as shall be provided by a uniform contract prescribed by the board of equalization." (Chapter 181, Laws of 1939.) Chapter 181 contains this provision: "Provided, further, that at any time before such sale, the taxpayer whose property has been deeded to the county may purchase such property by payment to the county of the full amount of the taxes, penalties and interest for which such property was sold and such pur-

chase and payment may be effected by an installment contract with annual payments, as provided in section 4465.9." Section 4465.9 provides for a down payment of twenty per cent. with deferred payments "on such terms as the board of county commissioners may approve." That section provides that when a sale is consummated the annual deferred payments may be extended over a period of not more than five years.

Counsel for relator relies upon the fundamental rule that █ the board of county commissioners has only such authority as is expressly conferred upon it by the legislature, and that it has no authority to reinstate a contract after the purchaser's rights have been forfeited by cancellation of the contract. That the authority of the county commissioners is limited by statute there can be no doubt; however, its authority with reference to the type of contracts in question is broad. If it were not so, the board could not make a contract making time of the essence thereof and declaring the purchaser's rights forfeited upon default in any of the terms of the contract. The board, having the implied power to place a forfeiture clause in the contract, has also the implied authority to relieve against the forfeiture provision.

The above quoted language from Chapter 181, Laws of 1939, gives the original property owner the absolute right to purchase the property upon the payment of the full amount of taxes, penalties and interest for which the property was sold █ by the tax sale proceedings. The purpose of the legislature was to grant a preference to the original property owner to become reinvested of his property upon payment of the taxes, penalties and interest. It was not the purpose of the legislature that the county should profit by the misfortune of the property owner in not paying his taxes when due.

Under section 4465.9, which is made the applicable statute by Chapter 181 of the Laws of 1939, the board is authorized to sell the lands acquired by tax deed, to the original owner on such terms as the board may approve, subject to two condi-

tions: The first condition is that twenty per cent. of the amount due shall be paid in cash. That this condition was met is not questioned here. The second condition is that the deferred payments shall not extend over a period of more than five years. No contention is made that that condition is not met here by the action of the board in reinstating Isabella Scally in her rights under the contract. The only effect of that reinstatement was to extend the time within which she might meet the installment payments already accrued. So long as the extension of time did not go beyond the five-year period fixed by statute, the board was acting within its implied authority.

In selling the lands, the county acts in its proprietary, as ██ ██ distinguished from its governmental, functions. The board has such implied powers as are usually exercised by the private seller of property. The rule is universal that a private owner may waive the forfeiture provisions in a contract after a forfeiture has been declared, so long as no rights of third persons have intervened. (66 C. J. 787; 17 C. J. S., Contracts, sec. 409, p. 897; 66 C. J. 767; and see *Federal Surety Co.* v. *Basin Construction Co.*, 91 Mont. 114, 5 Pac. (2d) 775.)

Hence it was within the power and authority of the board of county commissioners to reinstate Isabella Scally in her right to purchase the lands upon payment of the delinquent taxes, penalties and interest, so long as the time of payment did not extend over a period of more than five pears from the making of the contract. The court was right in sustaining the demurrer to the petition and in entering judgment for defendants.

The judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Erickson, Anderson and Morris concur.

Rehearing denied January 23, 1942.