STATE EX REL. JOHNSON, RESPONDENT, *v.*
GARFIELD COUNTY ET AL., APPELLANTS.
(No. 8455.)
(Submitted May 15, 1944. Decided September 7, 1944.)
[151 Pac. (2d) 481.]

*Messrs. R. V. Bottomly,* Attorney General, *George S. Smith,* Assistant Attorney General, *Robert E. Purcell,* County Attorney of Garfield County and *George W. Farr,* for Appellants, submitted an original and a reply brief; *Mr. Purcell* and *Mr. Fred Lay,* First Assistant Attorney General, argued the cause orally.

*Mr. W. B. Leavitt* and *Mr. D. L. O'Hern,* for Respondent, submitted a brief; *Mr. Leavitt* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

The relator, hereinafter referred to as the plaintiff, filed an "application" and a sustaining affidavit in the district court in and for Garfield County praying for an alternative writ of mandate directing the county board to sell to him a section of land described in the affidavit. The county had taken title to the land for delinquent taxes thereon. One Brooks is named as a defendant along with the county and the county board by reason of his having contracted with the county to purchase the land. The writ was issued as prayed for, served and returned.

The defendants, other than Brooks who made no appearance and was later defaulted, interposed a demurrer and a motion

to quash. After arguments the demurrer was overruled and the motion denied. Thereafter the county and the board answered. The plaintiff in his affidavit alleged a preferential right to repurchase the land by reason of his having been the owner thereof when title thereto had been taken by the county for delinquent taxes. The answer alleged that plaintiff's preferential right had lapsed by reason of his failure to purchase the land when it was first offered for sale.

The court made findings of fact and conclusions of law in favor of the plaintiff and made and entered its decree directing that the land be sold to the plaintiff pursuant to his offer, and awarding him $150 for attorney's fees and his costs. The county and the board appealed.

The facts as found by the court are as follows: January 31, 1941, the plaintiff was the owner of the section of land involved in the action; on the date mentioned the county took a tax deed to the land; the county board appraised the land pursuant to the statute, gave notice of intention to sell, and offered the same for sale March 10, 1941; no bid was received. April 8, 1941, the board leased the land to the plaintiff for one year; April 2, 1942, it was again leased to the plaintiff for one year subject to sale; the rental agreed on was paid by the plaintiff.

September 9, 1942, the county board again appraised the land pursuant to Chapter 171 of the Laws of the 1941 session, and ordered the land sold at public auction; November 2, 1942, the time set for the sale, the plaintiff appeared before the county board before the hour of sale claiming his preferential right to purchase the land as the prior owner thereof, and offered to pay the amount of the delinquent taxes, penalty and interest in the sum of $251.21, which offer the county board refused, and subsequently but on the same day sold the land to the defendant Brooks for $800 on a contract providing for payment of the purchase price on terms. As matter of law the court concluded that the plaintiff had a preferential right to purchase under the provisions of Chapter 171, and that it was the "mandatory

duty'' of the county and its board to sell the land to the plaintiff for the amount due for the delinquent taxes in the sum heretofore mentioned and that the plaintiff was entitled to a judgment to that effect, and declared the contract with Brooks void. Judgment was made and entered accordingly and a peremptory writ of mandamus was ordered issued requiring compliance by the county board with the decree.

Defendant's three specifications of error all go to the question as to the plaintiff's preferential right to repurchase the land. Chapter 171 of the 1941 Session Laws is segregated into six sections but the merits of the action at bar are controlled by section 1 of that Act which provides:

''Section 1. Whenever the county has acquired any land by tax deed it shall be the duty of the board of county commissioners within six (6) months after acquiring title to make and enter an order for sale of such lands at public auction at the front door of the courthouse, provided, however, that thirty (30) days' notice of such sale shall be given by publication in a newspaper printed in the county. Such notice shall be published once a week for three (3) consecutive weeks and shall be posted in at least three (3) public places in the county. Notice posted and published shall be signed by the county clerk and one notice may include a list of all lands to be offered for sale at one time. It shall describe the lands to be sold, the appraised value of same and the time and place of sale, and no sale shall be made for a price less than the fair market value thereof, as determined and fixed by the board of county commissioners prior to making the order of sale, which value shall be stated in the notice of sale. Provided, further, that at any time before the date fixed for such sale, notice of which has been given as above provided, the taxpayer or successor in interest whose property has been deeded to the county may purchase such property subject to the reservations hereinafter provided by payment to the county of the full amount of the taxes, penalties, and interest due on said land at the time of taking said tax deed and such purchase and payment may be effected by an

installment contract with annual payments as hereinafter provided.''

The contention of the county board is in effect that the tax deed to the county having been made and delivered January 31, 1941, and the land having once been appraised, advertised and offered for sale under the provisions of Chapter 181 of the 1939 Session Laws, but not sold, the 1939 Session Laws being in effect at the time the county acquired title to the land, and the land being offered once for sale and not sold, the plaintiff's preferential right was by such procedure lost. To sustain such contention it is argued that the phrase ''such sale'' in Chapter 171 ''contemplated the first offering for sale at public auction after the county acquired tax deed to the lands * * *'' and as the sale was not made at the first but the second offering the preferential right of the owner had lapsed.

No reasonable construction of Chapter 171 will sustain any such contention. The preferential right of the owner of the land sold for delinquent taxes is fully protected by both the 1939 Act and also by the 1941 Act. The wording of both Acts is substantially the same as to the preferential right to redeem. Both clearly give the owner the preferential right to pay the delinquent taxes with interest and penalty and reclaim his land at any time before sale by the county. The preferential right was first provided for by Chapter 33 of the Extraordinary Session of 1933-34 by an amendment to section 2235, Revised Codes 1921; and has been retained in substantially its original form in the amendments of 1939 and 1941. At no time since its enactment in 1933 could any person be deprived of his right to reclaim his land by paying the amount of delinquent taxes with penalty and interest prior to the time of sale as advertised by the board of county commissioners. We think this is so clearly the intent of the original Act and each subsequent amendment and re-enactment of the law that we deem it unnecessary to consider any of the other contentions of the defendants. The provisions of the various Acts mentioned which relate to the preferential right of the land owner whose land

has been taken over by the county for delinquent taxes and the owner's right to redeem were under consideration by this court in *Blackford, Trustee,* v. *Judith Basin County,* 109 Mont. 578, 98 Pac. (2d) 872, 126 A. L. R. 639, and again in *State ex rel. Barnhart* v. *Cranston,* 113 Mont. 61, 120 Pac. (2d) 828, wherein various phases of the owner's preferential right and the general policy of the legislature in the premises are reviewed. Our conclusions here are in harmony with the rules applied in such cases.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON, ERICKSON and ADAIR concur.